UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LUIS RAY JARAMILLO, JR., § | | |
| TDCJ No. 1566515, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | CIVIL ACTION NO. | |
| § | | |
| BEXAR COUNTY, TEXAS, § | SA-09-CV-0656 XR (NN) | |
| Officer Sergeant BRAULIO MENCHACA,§ | | |
| Officer CHRISTOPHER ESTRADA, § | | |
| Officer SERGIO GONZALEZ, § | | |
| Officer REYNALDO VILLARREAL, § | | |
| Individually &in their Official Capacities; § | | |
| § | | |
| Defendants. § | | |

## REPORT AND RECOMMENDATION

TO: Xavier Rodriguez
**United States District Judge**

This report and recommendation addresses the defendants' motion for summary judgment. I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by recommendation where my authority as a magistrate judge is statutorily constrained. After considering the motion, I recommend granting the motion in part and denying the motion in all other respects.

**Nature of the claims**. Plaintiff Luis Ray Jaramillo sued Bexar County, Texas, and four detention officers for various causes of action, flowing from his detention as a

pretrial detainee at the Bexar County Jail (the jail). Jaramillo has since been convicted and is confined at the Institutional Division of the Texas Department of Criminal Justice. Jaramillo filed this case as a civil rights case under section 1983. Jaramillo provided a detailed factual account of his allegations, but he did not clearly articulate the legal bases for his claims. Instead, Jaramillo referred to numerous constitutional amendments in his complaint, but some of his authorities do not apply to the allegations. For example, Jaramillo complained about violations of the Eighth Amendment, but the Eighth Amendment does not apply because Jaramillo was a pretrial detainee at the time of the events related to this case; the Eighth Amendment does not apply to pretrial detainees.[1] The Fifth Amendment does not apply to Jaramillo's allegations because Jaramillo was a state prisoner rather than a federal prisoner.[2] Because section 1983 does not create a

---

[1] *See Bell v. Wolfish*, 441 U.S. 520, 535, 537 n. 16 (1979) (explaining that complaints by pretrial detainees about confinement conditions are analyzed under the due process clause rather than the Eighth Amendment's "cruel and unusual punishment" standard which applies to convicted persons). "Pretrial detainees, as distinguished from convicted prisoners, are those individuals who have been charged with a crime but who have yet to be tried on the charge." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 474 (5th Cir. 1996). "Pre-trial detainees may not bring a cause of action based on the Eighth Amendment. It protects only those who have been convicted." *Baker v. Putnal*, 75 F.3d 190, 198-99 (5th Cir. 1996) (citation omitted).

[2] *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (stating that "the Fifth Amendment applies only to the actions of the federal government, and not to the actions of a [local] government….").

2

substantive right in itself, but rather provides a vehicle to vindicate substantive rights,[3] the court must first determine what substantive rights are implicated by Jaramillo's allegations.

**Jaramillo's complaints about telephone calls to his attorney**. Jaramillo attributed his troubles at the jail to his complaints that defendant-detention guard Braulio Menchaca refused to let him call his attorney. According to Jaramillo, Menchaca permitted him one call per week. After he used the jail grievance procedure to repeatedly complain about the restriction, Jaramillo alleged that Menchaca threatened to file false disciplinary reports about Jaramillo if he continued to file grievances. According to Jaramillo, his difficulty with Menchaca over attorney phone calls generated harassment and retaliation by Menchaca and other detention guards.

Although courts have not always been clear about the substantive right implicated by communications with an attorney,[4] the following Supreme Court

---

[3]*See Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979) (explaining that section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes").

[4]*See Tucker v. Randall*, 948 F.2d 388, 390-91 (7th Cir. 1991) ("Denying a pre-trial detainee access to a telephone for four days would violate the Constitution in certain circumstances. The Sixth Amendment right to counsel would be implicated if plaintiff was not allowed to talk to his lawyer for the entire four-day period. In addition, unreasonable restrictions on prisoner's telephone access may also violate the First and Fourteenth Amendments."); *Ademola v. Bureau of Prisons*, No. 06-3029, 2006 WL 2466840, * 4 (D.N.J. Aug. 23, 2006) ("[T]he telephone restriction violates Plaintiff's First Amendment right to access the courts."); *Simpson v. Gallant*, 231 F. Supp. 2d 341, 347 (D.

3

precedent indicates that Jaramillo's complaints about attorney phone calls implicates the

Fourteenth Amendment's Due Process Clause.

> The constitutional guarantee of *due process of law* has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. This means that inmates must have a reasonable

---

Me. 2002) (in case where pretrial detainee complained about denial of access to telephones because of violations of jail rules, the court reasoned: "During the period in question Simpson was a non-convicted pre-trial detainee who was seeking access to the phones and mail to procure his freedom and advance his defense.… As a challenge to the jail's reaction to a disciplinary infraction, Simpson's claim could be characterized as a condition of pretrial detention claim under *Bell v. Wolfish*.…); *Johnson v. Galli*, 596 F. Supp. 135, 138 (D.C. Nev. 1984) ("Ofttimes use of a telephone is essential for a pretrial detainee to contact a lawyer, bail bondsman or other person in order to prepare his case or otherwise exercise his rights.… The better view appears to be that there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and that such use is protected by the First Amendment."); *Owens-El v. Robinson*, 442 F. Supp. 1368, 1386 (D.C. Pa. 1978) ("Inmates have a constitutional right, protected by the First Amendment, to communicate with friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls."); *Collins v. Schoonfield*, 344 F. Supp. 257, 280 (D.C. Md. 1972) (accepting the parties stipulations that: "The right to a fair trial and effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments extends to pre-trial detainees. *** Various conditions and practices having the practical effect of interfering with these rights are unconstitutional including: (1) interruption of mail between attorneys and clients ***; (2) failure to provide a suitable visiting area for attorney visits ***; (3) and failure to allow inmates reasonable access to telephones for purposes of conversing with counsel ***."); *Jones v. Wittenberg*, 330 F. Supp. 707, 719 (D.C. Ohio 1971) ("Prisoners who are serving sentence are properly subject to some restrictions on communication, to the extent that this may be a desirable form of punishment.… Obviously, however, prisoners who are awaiting trial are not to be punished at all, except to the extent necessary to preserve order among members of a group living in close quarters. Hence, prisoners awaiting trial may not be limited in their communications with persons outside except to the extent necessary to prevent abuse of the privilege, or as a means of enforcing discipline generally.").

opportunity to seek and receive the assistance of attorneys.[5]

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty *without due process of law*, … the proper inquiry is whether those conditions amount to punishment of the detainee."[6] Under this precedent, a detention guard would violate a pretrial detainee's Fourteenth Amendment guarantee of due process of law if the detention guard deprived the inmate of a reasonable opportunity to seek and receive the assistance of an attorney so as to constitute punishment.

Jaramillo did not allege that he was deprived of a reasonable opportunity to seek and receive the assistance of his attorney. The papers in Jaramillo's habeas case indicate Jaramillo was represented by three attorneys during his detention at the Bexar County Jail. During that time, Jaramillo filed numerous pro se pleadings and twice petitioned the Fourth Court of Appeals for a writ of mandamus to compel the trial court to rule on his pro se pleadings.[7] Jaramillo also petitioned this court for habeas relief[8] and filed a

---

[5]*Procunier v. Martinez*, 416 U.S. 396, 419 (1974) (emphasis added).

[6]*Bell*, 441 U.S. at 535 (emphasis added).

[7]Memorandum Opinions in Appeal No. 04-07-00353-CV (Tex. App.—San Antonio June 6, 2007) & No. 04-08-00402-CR (Tex. App.—San Antonio July 30, 2008 ) (both opinions denying the applications for writs because Jaramillo was represented by counsel and was not entitled to hybrid representation).

[8]*See* Cause No. SA-08-CV-653-XR.

5

frivolous lawsuit against Bexar County and jail detention guards.[9]  Ultimately, Jaramillo pleaded guilty to the charges that formed the basis for his detention.[10]  Although he now claims in his habeas application that his plea was involuntary, no allegation in this case attributes Jaramillo's plea decision to Menchaca.

Rather than constitute a claim about the denial of reasonable access to his attorney(s), Jaramillo's allegations about attorney phone calls provide the factual background and alleged motivation for the complained-about retaliation and harassment.  To the extent that Jaramillo intended to attribute a violation of the Fourteenth Amendment to interference with attorney phone calls, Jaramillo failed to state a claim upon which relief may be granted because he did not allege that he did not have a reasonable opportunity to seek and receive the assistance of attorneys.  Moreover, the grievances attached to Jaramillo's complaint — complaining about a use of force — indicates Jaramillo never intended to pursue a claim based on attorney phone calls.[11]  Otherwise, Jaramillo would have attached his grievances about attorney phone calls.

**Complaints about the use of force**.  Jaramillo alleged that defendant detention guards Sergio Gonzalez and Christopher Estrada kicked and punched him in retaliation for grievances he filed against Menchaca.  About this claim, the parties' stories varied

---

[9]*See* Cause No. SA-09-CV-232-XR.

[10]*See* Cause No. SA-10-CV-325-XR.

[11]*See* docket entry # 3.

greatly. Jaramillo complained about a unprovoked attack in which he was severely beaten. Gonzalez described an incident in which he defended himself after Jaramillo became belligerent and attempted to strike him. Estrada reported responding to the incident and assisting Gonzalez in restraining Jaramillo. Whatever occurred, no question exists that the Due Process Clause protected Jaramillo from the use of excessive force amounting to punishment.[12] To prevail in this claim, Jaramillo must show that the use of force by Gonzalez and Estrada shocks the contemporary conscience.[13] Jaramillo stated a claim against Gonzalez and Estrada for a violation of the Fourteenth Amendment based on an excessive use of force because if a jury believed Jaramillo's version of the use-of-force incident, the jury might conclude the events shocked the contemporary conscience.

**Jaramillo's complaints about harassment and retaliation.** Jaramillo complained

---

[12]*Graham v. Connor*, 490 U.S. 386, 395 n.10 ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). *See Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993) (stating that the Fourth Amendment does not apply to complaints about excessive force "after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time;" instead, the Fourteenth Amendment applies to complaints by pretrial detainees).

[13]*See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience."); *Hernandez v. Tex. Dep't of Protective and Regulatory Services*, 380 F.3d 872, 880 (5th Cir. 2004) ("To demonstrate a viable substantive due process claim, in cases involving government action, the plaintiff must show that the state acted in a manner that "shocks the conscience.").

7

about various acts he characterized as retaliation and harassment, all motivated by his grievances about attorney phone calls.[14] For example, Jaramillo alleged that: Estrada sexually harassed him during a pat-down search, Estrada paid a very large confined gang-member to fight him, Gonzalez and Estrada beat him without provocation, Gonzalez and Estrada called him a child molester causing attacks by other inmates, and defendant-detention guard Reynaldo Villarreal told inmates he was incarcerated for a sexual offense.

Allegations about retaliation based on using the prison grievance procedure implicate an inmate's First Amendment right to access the courts.[15]

> A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."[16]

"The purpose of allowing inmate retaliation claims under § 1983 is to ensure that

---

[14]Docket entry # 3, ¶ 75.

[15]*See Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972) ("[P]risoner access to the courts is not to be curtailed or restricted by threats, intimidation, coercion or punishment."). *See also Geder v. Godinez*, 875 F. Supp. 1334, 1338 (N.D. Ill.1995) ("Prison inmates have a protected First Amendment right to submit written and oral complaints about prison conditions, and where there is evidence of retaliation against constitutionally-protected speech, the protection of prisoners' due process rights does not shield prison employees from a Section 1983 claim.").

[16]*Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citation omitted).

8

prisoners are not unduly discouraged from exercising constitutional rights."[17] Jaramillo's factual allegations about his retaliation claim are somewhat conclusory, but he has nevertheless stated a claim as to Menchaca, Estrada and Gonzalez. His allegations about Villarreal, however, are too conclusory to state a claim[18] because he complained only that Villarreal told other detainees that he was incarcerated for a sexual offense against a child-boy and that three gang members jumped him.[19] Jaramillo did not even plead "a chronology of events from which retaliation [on the part of Villarreal] may plausibly be inferred."[20]

**Viable claims**. Based on the foregoing discussion, Jaramillo stated the following viable claims: (1) an excessive use of force claim against Bexar County, Gonzalez and Estrada, and (2) a retaliation claim against Bexar County, Menchaca, Estrada and Gonzalez. Because Jaramillo also named Bexar County as a defendant, Jaramillo's claims against Menchaca, Estrada and Gonzalez are construed as being against these defendants in their individual capacities. To the extent that Jaramillo sought to sue these

---

[17] *Morris*, 449 F.3d at 686.

[18] *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("The inmate must allege more than his personal belief that he is the victim of retaliation. Mere conclusionary [sic] allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim.") (citation omitted).

[19] Docket entry # 3, ¶ 33.

[20] *Jones*, 188 F.3d at 325.

defendants in their official capacities, those claims fail to state a claim because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."[21]

**The summary-judgment motion**. The pending motion advances several reasons for summary judgment: (1) the failure to exhaust jail administrative remedies, (2) the failure to allege a policy upon which to base liability against Bexar County, (3) qualified immunity, and (4) failure to state a claim. The latter ground is addressed above.

**Exhaustion of administrative remedies**. "Under the Prison Litigation Reform Act (PLRA), prisoners are required to exhaust administrative remedies before filing suit…."[22] "Proper exhaustion demands compliance with [the applicable institution's] deadlines and other critical procedural rules…."[23] The Fifth Circuit instructed courts to "interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'"[24] thus, a court should consider a grievance "sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."[25]

---

[21] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[22] *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

[23] *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

[24] *Johnson*, 385 F.3d at 516.

[25] *Johnson*, 385 F.3d at 517.

[A]s a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining."[26] Because exhaustion is an affirmative defense, the defendants bear the burden of demonstrating Jaramillo failed to exhaust available administrative remedies.[27]

The defendants took an allegation-by-allegation approach to argue that Jaramillo failed to exhaust his administrative remedies. Because the jail grievance procedure requires a two-step process and specified deadlines, the County addressed each factual allegation and addressed whether Jaramillo followed the procedures. This approach does not consider whether Jaramillo's grievances gave jail officials a fair opportunity to address the complaints that form the basis of the lawsuit. Taking the latter approach, there can be no serious question that Jaramillo gave jail officials fair notice of his complaints about an alleged use of excessive force, or about complaints of retaliation attributed to grievances filed against Menchaca. Jaramillo presented summary-judgment evidence raising a fact question about exhaustion.[28] Part of his evidence

---

[26]*Id*.

[27]*See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

[28]*See* docket entry # 93, ex. 1, pp. 7-10 (in appeal of disciplinary action, complaining about retaliation by Menchaca, Estrada and Gonzalez and being assaulted by other inmates); ex. 2 (step one grievance form and appeal, complaining that Menchaca threatened retaliation if Jaramillo wrote any more grievances about attorney phone calls); ex. 4, pp. 2, 4, 6 & 19 (reporting that Jaramillo complained that Estrada sexually harassed him because he wrote a grievance against Menchaca, step one grievance form complaining about Estrada, appeal complaining that Menchaca and

11

included the jail administrator's request for a professional standards and integrity investigation because "the injuries sustained by the inmate are not consistent with the description of force used by the officer."[29] The defendants are not entitled to summary judgment based on a failure to exhaust administrative remedies.

**Failure to allege an official policy to support liability of Bexar County**. Because a local government cannot be held liable for constitutional violations based on the theory of respondeat superior,[30] the defendants asked for summary judgment in favor of Bexar County. The defendants argued that no evidence exists that Bexar County had an official policy that sanctioned the conduct Jaramillo complained about and that no Bexar County policy constituted the moving force behind the alleged deprivations of constitutional rights. The defendants also argued that even if a policy existed, Jaramillo

---

Gonzalez had other inmates assault him & discipline report reporting that Jaramillo complained about a sexual assault during pat-down search); ex. 6 (investigation report and polygraph results from investigation about unprovoked attack by Gonzalez and Estrada); imaged ex. 7A, pp. 3-6 (statement of complaint to professional standards and integrity unit, explaining that the assault by Gonzalez and Estrada began with Menchaca refusing attorney phone calls and Estrada sexually harassing him); & imaged ex. 11 (grievance complaining that detention officers told inmates he was incarcerated for sexual offense and complaining about attempts on his life).

[29]Docket entry # 93, ex. 7, p. 1.

[30]*See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

12

cannot show that he was injured as a result of such policy.

To hold a local government entity liable under section 1983, the unconstitutional conduct must be directly attributable to the governmental entity through some sort of official action or imprimatur; isolated unconstitutional actions by a governmental employee do not trigger liability.[31] In addition, a direct causal link must exist between the governmental policy and the constitutional deprivation.[32] "An 'official policy' is either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy."[33]

The summary-judgment record contains no evidence of a Bexar County policy statement, ordinance, or regulation, that has been officially adopted by a Bexar County policymaker, or a persistent, widespread practice of Bexar County officials or employees,

---

[31] *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). *See also Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-29 (5th Cir. 1999) ("To hold a municipality accountable for a violation of constitutional rights, a plaintiff must show: (1) that the municipal employee violated his clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.").

[32] *See Piotrowski*, 237 F.3d at 580.

[33] *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).

which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents Bexar County's policy. Although Jaramillo complained generally in his complaint about a policy or custom encouraging the alleged violations,[34] he attributed his troubles to Menchaca's personal practice[35] of preventing him from talking to his attorney. Jaramillo did not complain about Bexar County's policy of permitting one attorney phone call per day.[36] Instead, he complained about not being able to call his attorney every day.

The conduct Jaramillo complained about in his complaint is more properly characterized as rogue behavior on the part of individual detention guards than policy-sanctioned conduct or a practice of retaliating against inmates for seeking attorney phone calls. Bexar County is entitled to summary judgment because no summary-judgment evidence raised a fact question about whether the alleged deprivations resulted from a Bexar County policy or a persistent, widespread practice of Bexar County officials or employees which constituted a Bexar County custom.[37]

**Qualified immunity**. Finally, the individual defendants maintain they are

---

[34]Docket entry # 3, ¶ 55.

[35]*Id.*, ¶ 57.

[36]Docket entry # 86, ex. 3, p. 6.

[37]*Accord Baker*, 75 F.3d at 200 (explaining that a local government is not vicariously liable for the actions of its employees under section 1983; "liability inures only when the execution of a local government's policy or custom causes the injury.").

entitled to qualified immunity because their conduct was objectively reasonable. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[38] Ordinarily, the examination of a claim of qualified immunity is a two-step inquiry.[39] First, a court must determine whether the plaintiff alleged a violation of a clearly established right. Second, the court must determine whether the defendant's conduct was objectively reasonable in light of the legal rules applicable at the time of the alleged violation.[40] "Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."[41]

As to the first step, Jaramillo met his burden because no question exists that a pretrial detainee has clearly-established rights to be free from the use of excessive force[42]

---

[38] *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[39] Although the qualified-immunity analysis consists of two steps, trial courts have "the discretion to decide whether that procedure is worthwhile in particular cases." *Pearson*, 129 S. Ct. at 821. "[T]here will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id*. at 820.

[40] *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995).

[41] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

[42] *See Valencia*, 981 F.2d at 1443-44 ("[The Fourteenth] Amendment provides [the] appropriate constitutional basis for protecting against deliberate official uses of force

and to be free from retaliation and harassment for complaining through proper channels about a detention guard's misconduct.[43] The second step requires the court to assume Jaramillo's factual assertions are true and determine whether his factual allegations are materially sufficient to establish that the defendants acted in an objectively unreasonable manner.[44] If Jaramillo's allegations are true, Menchaca, Gonzalez and Estrada acted in an objectively unreasonable manner. The differences in the parties' stories raise fact questions precluding summary judgment on grounds of qualified immunity. Because Jaramillo met his burden under the second step, Menchaca, Gonzalez and Estrada are not entitled to summary judgment on grounds of qualified immunity.

**Recommendation**. Based on the foregoing I recommend granting the defendants' motion for summary judgment to the following extent: I recommend dismissing Jaramillo's claim against Villarreal for failing to state a claim. I recommend dismissing the claims against Menchaca, Estrada and Gonzalez in their individual capacities

---

occurring, … after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time."). *See also Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) ("While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments.").

[43]*Morris*, 449 F.3d at 684.

[44]*See Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000) ("[W]e assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim of excessive force under these circumstances.").

because a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. I recommend entering summary judgment in favor of Bexar County because the record includes no evidence showing the alleged deprivations of constitutional rights were caused by a Bexar County policy or practice. I recommend denying the motion in all other respects.

If the district court accepts these recommendations, the following claims will remain for trial: (1) an excessive use of force claim against Gonzalez and Estrada, and (2) a retaliation claim against Menchaca, Estrada and Gonzalez. All scheduling order deadlines have passed and this case can be scheduled for trial.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[45] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for

---

[45] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[46] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[47]

**SIGNED** on May 2, 2011.

*Nancy Stein Nowak*
_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[46] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[47] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).